[Cite as *Bennett v. Martin*, 2013-Ohio-5445.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Duane C. Bennett, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-99 |
| v. | : | (C.P.C. No. 04CVH-09-9259) |
| James R.J. Martin, II et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 12, 2013

*Law Offices of Russell A. Kelm*, *Russell A. Kelm*, and *Joanne W. Detrick*, for appellee.

*Bricker & Eckler LLP*, *Quintin F. Lindsmith*, and *Gregory J. Krabacher*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, James R.J. Martin, II, Citynet Ohio, LLC, Citynet Holdings, LLC, and Citynet, LLC ("Citynet"), appeal from a judgment of the Franklin County Court of Common Pleas rendered in favor of appellants on all asserted claims, awarding plaintiff-appellee, Duane C. Bennett, attorney fees and costs in the amount of $105,276.13 and denying appellants' requests for sanctions against appellee. For the reasons that follow, we affirm the judgment of the trial court.

## I. BACKGROUND

{¶ 2} According to this court's decision in *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195 (10th Dist.), appellee alleged he had been the general manager for

the Columbus office of Adelphia Business Systems ("Adelphia").  *Id.* at ¶ 2.  After Adelphia went bankrupt and closed its Columbus office, appellee sought to broker the sale of Adelphia assets out of the bankruptcy court.  *Id.*  Appellee located appellants, who hired him to assist in buying certain Adelphia assets and to create a new Citynet operation in Columbus.  *Id.*  According to appellee, once appellants had used him to acquire the assets they needed, they suspended and humiliated him.  *Id.*  Thereafter, appellants discovered appellee had hired an attorney, and appellants then forced appellee's actual or constructive termination and replaced him with a substantially younger person.  *Id.*

{¶ 3}   Litigation in this matter began on September 3, 2004 with the filing of a complaint against eight named defendants.  The complaint asserted causes of action for age discrimination, in violation of R.C. 4112.02(A), retaliation, in violation of R.C. 4112.02(I), fraud, fraudulent inducement, civil conspiracy, promissory estoppel, and breach of contract.  Thereafter, four defendants were dismissed from the lawsuit and the trial court dismissed appellee's claims for fraud, fraudulent inducement, civil conspiracy, and promissory estoppel.  The remaining claims proceeded against appellants.

{¶ 4}   A contentious discovery period ensued, which ultimately resulted in appellee seeking a default judgment as a Civ.R. 37(B) sanction for appellants' violation of previous discovery orders issued by the court.  The trial court referred the matter to a magistrate for a hearing on the Civ.R. 37(B) motion.  In an 18-page decision rendered on September 18, 2008, the magistrate concluded appellants' proffered excuse in failing to comply with discovery orders was "factually inaccurate" and was the result of "utter inaction" that amounted to a willful failure to abide by the court's orders.  (Sept. 18, 2008 Magistrate Decision, 8, 9.)  While recognizing the difficult task of weighing the evidence and determining the credibility of witnesses as to whether particular documents requested in discovery actually existed, the magistrate stated:

> Such a challenge is conspicuously absent in this matter, as the evidence unambiguously shows that Defendants have deliberately ignored the Court's Orders with respect to a number of documents in their possession.  As the above factual findings establish, the resulting noncompliance by Defendants does not necessarily derive from a disrespect for the Court's orders themselves, but rather, from a misplaced arrogance concerning respective positions and/or objections

that are mostly unsupported by the facts and the law. It is particularly troublesome that many of the arguments articulated by Defendants at the hearing may have been appropriate or ripe for further consideration had Defendants simply bothered to petition the Court via a motion for a protective order.

Notwithstanding this explanation, it can hardly be disputed that this course of conduct by Defendants has resulted in significant prejudice on the part of Plaintiff. Chasing documents and data that may or may not exist for several years, in spite of favorable orders issued by the Court calling for their production, not only results in substantial costs and delay, but undermines confidence in the judicial system. Balancing these circumstances, the record is equally clear in this matter that Defendants have produced a large volume of documents, which are undisputed to be in excess of 30,000 pages. It is further evident that Defendants appear to have produced the lion's share of information sought by Plaintiff in this action. It is only with respect to a minority of items that Defendants have been dilatory in what must be described as an all-or-nothing approach or gamble. Lastly, the evidence at the hearing demonstrated that with respect to two of Plaintiff's discovery requests, Defendants demonstrated an inability to comply.

Taken together and in conjunction with the five elements set forth in *Russo* [*v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175 (9th Dist.1987)], the Magistrate concludes that the ultimate sanction of default judgment is too severe and inappropriate in this action. * * * Rather, a severe monetary sanction is more commensurate with the resulting prejudice on Plaintiff caused by Defendants' delay. As such, it is the Magistrate's recommendation that Defendants be responsible for all of the reasonable expenses, with emphasis on attorney's fees, for those discovery efforts initiated by Plaintiff from the time of his first motion to compel, filed on June 15, 2005, through the present. This undoubtedly shall result in a very substantial sum, given the hourly rate reasonable for attorneys as experienced as Plaintiff's in this area of practice, as well as the Herculean efforts that have been made to obtain outstanding discovery. The Magistrate justifies such a measure as necessary to discourage the cavalier tactics and obstinate inaction on the part of Defendants, as well as counsel.

(Sept. 18, 2008 Magistrate's Decision, 15-16.)

{¶ 5}   Additionally, the magistrate recommended that the trial court order appellants to fully respond to the identified document requests within 20 days of adopting the magistrate's decision.  The magistrate also recommended that the trial court order appellants to provide, at their own cost: (1) a forensic copy of the computer hard drives of Martin, Citynet's Chief Financial Officer, and Citynet's Chief Operating Officer, and (2) any schedule, calendar, .pst file, Outlook application or PDP application utilized by Martin.  *Bennett* at ¶ 26.

{¶ 6}   Appellants objected to the magistrate's recommendation that they produce forensic copies of the hard drives of the specified computers and copies of Martin's schedule, calendar, .pst file, Outlook application, and/or PDP application.  On March 4, 2009, the trial court issued its ruling on appellants' objections and therein concluded that, given appellants' consistent intransigence to providing discovery materials, forensic imaging of the hard drives was a "reasonable solution" that would ensure appellants actually produced all responsive documents.  *Bennett* at ¶ 28.

{¶ 7}   In sum, the trial court approved and adopted the magistrate's decision with a few relevant caveats.  Asserting two assignments of error, appellants appealed the trial court's March 4, 2009 order.  In *Bennett*, this court rejected appellants' argument that the trial court abused its discretion in ordering forensic imaging as a Civ.R. 37(B) sanction for noncompliance with the trial court's orders.  However, the *Bennett* court concluded the trial court erred in not providing adequate protections to safeguard the confidentiality of the information contained on the computer systems to be imaged.  *Id.* at ¶ 49.  On November 24, 2009, this court remanded the matter with a recommendation that the trial court adopt a protocol similar to the one described in *Bennett* to ensure appellee had sufficient access to the computer systems while also providing appellants an opportunity to identify and protect privileged and confidential materials.  *Id.*

{¶ 8}   After remand, on December 23, 2009, appellee filed a motion to amend the complaint to add a claim for spoliation of the evidence.  Prior to ruling on appellee's motion, the trial court issued an order on February 1, 2010 amending its discovery protocol in accordance with *Bennett*.  Shortly thereafter, on February 26, 2010, appellee filed a motion to compel and for sanctions.  On April 1, 2010, the magistrate rendered a

decision denying appellee's motion to amend the complaint. The magistrate also denied in part and granted in part appellee's motion to compel and for sanctions.

{¶ 9}   On June 11, 2010, appellee filed another motion seeking a default judgment as a Civ.R. 37(B) sanction. Appellee argued, inter alia, that appellants intentionally deleted data and failed to produce data in contravention of previous court orders. On September 1, 2010, the magistrate denied appellee's June 11, 2010 motion and declined to award any additional monetary sanctions. Adamant that appellants were not complying with court orders and were engaging in discovery abuses, appellee filed a supplemental motion for default judgment and motion for contempt on September 8, 2010. Appellee also filed a motion to compel on September 14, 2010. The magistrate denied appellee's motions after concluding the assertions made therein were without merit.

{¶ 10} A jury trial commenced on October 4, 2010, and on October 18, the jury returned verdicts in favor of appellants on appellee's claims for age discrimination, retaliation, and breach of contract. On November 24, 2010, appellants filed a motion for sanctions, pursuant to R.C. 2323.51, concerning appellee's claim that he had an agreement entitling him to equity compensation. On November 29, 2010, appellants filed an alternative motion for sanctions under Civ.R. 11 and 37(A)(4), asserting appellee's motions filed December 23, 2009, February 26, June 11, September 8 and 14, 2010 were frivolous and unwarranted.

{¶ 11} The magistrate held an evidentiary hearing on November 30, 2010 to determine the amount of fees to be awarded to appellee as a discovery sanction in accordance with the court's March 4, 2009 order. For the sanction, appellee submitted an initial fee application requesting fees and costs in the amount of $384,652.71.

{¶ 12} On May 3, 2011, the magistrate issued a 33-page decision that addressed several outstanding issues. As is relevant here, said decision addressed appellants' motions for sanctions and appellee's fee application. Specifically, the magistrate concluded $105,276.13 in fees and costs was reasonable and awarded that amount to appellee for the Civ.R. 37(B) sanction.

{¶ 13} With respect to appellants' motions, the magistrate concluded, even though he granted a directed verdict in appellants' favor on appellee's claim for equity compensation, such a ruling did not equate to a finding of frivolity in appellee's pursuit of

the claim.  Further, the magistrate concluded "some evidence in support [of the claim] does exist in the record."  (May 3, 2011 Magistrate's Decision, 28.)  Regarding appellants' alternative motion for sanctions, pursuant to Civ.R. 11 and 37(A)(4), the magistrate determined appellants failed to meet their burden of demonstrating sanctions were warranted with respect to the five challenged motions.

{¶ 14}  Appellants and appellee filed objections to the magistrate's decision.  The trial court overruled all the asserted objections and adopted the magistrate's decision in its entirety.  A final judgment entry was issued on January 8, 2013, wherein judgment was entered in favor of appellants on all claims, and attorney fees and costs in the amount of $105,276.13 were awarded to appellee and against appellants.

## II.  ASSIGNMENTS OF ERROR

{¶ 15}  In this appeal, appellants bring the following three assignments of error for our review:

> [I.]  The trial court erred in overruling Defendants' Motion for Sanctions as to Plaintiff's claim that there was an agreement entitling him to equity compensation.
>
> [II.] The trial court erred in overruling Defendants' alternative motion for sanctions concerning the court's denial of five discovery motions pursued by Plaintiff.
>
> [III.] The trial court erred in overruling Defendants' objections to Plaintiff's fee application.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 16}  In the first assignment of error, appellants argue the trial court erred in denying their motion for sanctions, pursuant to R.C. 2323.51, that was directed at appellee's pursuit of his claim for equity compensation.

{¶ 17}  Pursuant to R.C. 2323.51, "a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred due to the frivolous conduct, however 'the trial court must hold a hearing to determine (1) whether the particular conduct was frivolous, (2) if the conduct was frivolous, whether any party was adversely affected by it, and (3) if an award is made, the amount of the award.' "  *Crawford v.*

*Ribbon Technology Corp.*, 143 Ohio App.3d 510, 514 (10th Dist.2001), quoting *Hollon v. Hollon*, 117 Ohio App.3d 344, 348 (4th Dist.1996). "Frivolous conduct," as defined in R.C. 2323.51(A)(2)(a), means any of the following:

> (i)  It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 18} Under R.C. 2323.51(A)(2)(a)(ii), the test for determining frivolous conduct is whether "no reasonable attorney would have brought the action in light of the existing law." *Groves v. Groves*, 10th Dist. No. 09AP-1107, 2010-Ohio-4515, ¶ 17, citing *L & N Partnership v. Lakeside Forest Assn.*, 183 Ohio App.3d 125, 2009-Ohio-2987, ¶ 37 (10th Dist.). " 'Whether a claim is warranted under existing law is an objective consideration. * * * The test * * * is whether no reasonable lawyer would have brought the action in light of the existing law.  In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.' " *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, ¶ 36 (1st Dist.), quoting *Hickman v. Murray*, 2d Dist. No. 15030 (Mar. 22, 1996).  " 'Further, R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed against either counsel or a party for frivolous conduct.' " *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 19,

quoting *Sain v. Roo*, 10th Dist. No. 01AP-360 (Oct. 23, 2001), citing *Stone v. House of Day Funeral Serv., Inc.*, 140 Ohio App.3d 713 (6th Dist.2000).

{¶ 19} A decision on whether to award sanctions under R.C. 2323.51 will not be reversed absent an abuse of discretion. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 11, citing *Ron Scheiderer & Assocs. v. London*, 81 Ohio St.3d 94, 98 (1998) ("trial court did not abuse its discretion in awarding attorney fees to the defendants that include fees incurred for the prosecution of the motion for sanctions"); *see also Resources for Healthy Living, Inc. v. Haslinger*, 6th Dist. No. WD-10-073, 2011-Ohio-1978, ¶ 26 ("the decision as to whether to impose sanctions under * * * R.C. 2323.51 rests in the sound discretion of the court and will not be reversed absent an abuse of that discretion"); *Sopp v. Turner*, 10th Dist. No. 10AP-25, 2010-Ohio-4021, ¶ 9 ("Appellate review of a trial court's award of attorney fees for frivolous conduct pursuant to R.C. 2323.51 is under the abuse-of-discretion standard, but the trial court's factual findings will not be disturbed if they are supported by competent, credible evidence."). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} In their motion for R.C 2323.51 sanctions, appellants argued that, despite appellee's assertion that there was an agreement entitling him to equity compensation, appellee knew before the lawsuit was filed, and he admitted at trial that no such agreement existed. Thus, appellants argued to the trial court, as they do on appeal, that filing and pursuing a claim for equity compensation constituted frivolous conduct under each definition provided in R.C. 2323.51(A)(2)(a).

{¶ 21} Article II of the employment agreement governing appellee's employment provided for compensation and stated in part:

> 2.01. <u>Compensation</u>. The Company agrees to pay EMPLOYEE and EMPLOYEE agrees to accept, as compensation for all services rendered by him to the Company for the services described in Section 1.01 during the Period of Employment, compensation as the Manager shall fix from time to time, but not less than the following benefits and amounts, payable as follows:
>
> * * *

(ii) equity incentive compensation and cash bonus plans whereby EMPLOYEE shall receive the following:

(a) equity incentive compensation as adopted and approved by the Manager and put into effect prior to the last day of the Period of Employment;

[(b)] benefits provided under any pension plan or similar or substitute plan adopted by the Company prior to the last day of the Period of Employment;

[(c)] a term 1ife insurance policy in the face amount of $1,000, 000 provided EMPLOYEE is insurable at standard rates;

[(d)] benefits including, but not limited to, profit sharing plans, and split-dollar life insurance arrangements or other similar programs in effect prior to the last day of the Period of Employment.

* * *

[(v)] Such additional forms of compensation as the Manager may determine from time to time.

{¶ 22} Article VII contained the following language:

7.02. <u>Amendments/Modifications</u>. No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification, or discharge is agreed to in writing, signed by EMPLOYEE and on behalf of the Company by such officer as may be specifically designated by the Manager. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the Delaware.

{¶ 23} Based on the above provisions, appellants argued on the day of trial that the employment agreement did not require the payment of equity compensation and that,

even if equity compensation was going to be paid, a plan for the payment had to be in writing and signed by both parties.  Because appellee testified at his deposition that no such signed document existed, appellants argued pursuing a claim for equity compensation constituted wholly frivolous conduct.  Rejecting appellant's position, the magistrate stated that he did "not find as a matter of law in construing the employment agreement that in conjunction with the arguments that have been put forth that it is dispositive that the [appellee] cannot make arguments or introduce evidence based on equity incentive compensation.  Again, I think it's an issue of fact.  The jury will need to determine in conjunction with these exhibits, but I'm not prepared to rule on that."  (Tr. 37.)

{¶ 24} The following day, appellants made a motion for the trial court to find that the employment agreement did not require an equity compensation plan be put in effect.  Though agreeing the employment agreement barred any evidence of pre-contract discussions, the magistrate again stated whether there was an agreement after the parties signed the employment agreement was yet to be determined by the evidence.

{¶ 25} After appellee's case-in-chief and admission of exhibits, appellants moved for a directed verdict on all claims.  The magistrate granted the motion with respect to appellee's equity compensation claim.   The magistrate concluded the employment agreement required an equity compensation plan to be in writing and "a mere writing or a mere e-mail by Mr. Martin or someone else with Citynet adding additional terms or further explaining equity incentive compensation is insufficient because the agreement specifically requires that these modifications be signed off by both Mr. Bennett and the appropriate agent and representative for Citynet; in this instance, Mr. Martin, as he was the party to the original agreement.  So, therefore, equity incentive compensation did not take place according to the very provisions and terms of the agreement."  (Tr. 266-67.)

{¶ 26} Because the trial court agreed with appellants' interpretation of the employment agreement, and because appellee stated in his deposition that, other than an email stating he would receive equity compensation, no other writings existed, appellants argued appellee's assertion of the claim must be viewed as frivolous.  However, as appellee argued, the interpretation of the contract is what was at issue in this case.  As argued to the trial court, appellee's contention was the employment agreement did not require a

written plan, but required only that equity incentive compensation be adopted and approved by the manager and that this could have been placed into effect by verbal approval. Though section 7.02 requires changes and modifications to be in writing and signed by both parties, appellee asserted this requirement does not apply to equity incentive compensation because such compensation is not considered the type of change or modification contemplated by section 7.02.

{¶ 27} Appellants were granted a directed verdict on the claim for equity compensation; however, "R.C. 2323.51 does not purport to punish a party for failing on a claim. Rather, it addresses conduct that serves to harass or maliciously injure the opposing party in a civil action or is unwarranted under existing law and for which no good-faith argument for extension, modification, or reversal of existing law may be maintained." *Indep. Taxicab Assn. of Columbus v. Abate*, 10th Dist. No. 08AP-44, 2008-Ohio-4070, ¶ 22.

{¶ 28} In denying the request for R.C. 2323.51 sanctions, the magistrate took into consideration "all of his written decisions" along with the testimony adduced at trial and was unable to find frivolous conduct on the part of appellee or his counsel. (May 3, 2011 Magistrate's Decision, 27.) The trial court did not conclude that no contract existed. Rather, the trial court disagreed with appellee's interpretation of what the contract required; specifically, whether it required payment of equity compensation and, if so, did it require a writing signed by both parties. Though the magistrate questioned whether or not the claim could have survived summary judgment proceedings, due to procedural issues, such summary proceedings did not occur in this case with respect to this claim. Regardless, the magistrate found "some evidence in support does exist in the record." (May 3, 2011 Magistrate's Decision, 28.)

{¶ 29} On appeal, appellants repeat many of the arguments raised to the trial court, including their argument that appellee was fully aware all along he would be unable to prove the claim for equity compensation. Similarly, appellee repeats his argument that the employment agreement did not require a writing signed by both parties. In our view, the parties' disagreement involves one of contractual interpretation. Appellee set forth an interpretation that differed from the one set forth by appellants, and the trial court agreed with appellants' interpretation. As recognized by the trial court, this alone does not

require a finding that no reasonable attorney could argue the claim such that pursuit of the claim constituted frivolous conduct under R.C. 2323.51. *Riston*. After review of the relevant language from the employment agreement, we find no error in the trial court's conclusion that appellee's pursuit of a claim for equity compensation under the terms of the employment agreement did not constitute frivolous conduct under R.C. 2323.51.

{¶ 30} Appellants' argument that the equity compensation claim lacked evidentiary support directly flows from their argument that appellee incorrectly interpreted the employment agreement. However, had appellee prevailed in his interpretation of the employment agreement, a writing signed by both parties would not have been required in order for appellee to be successful on this claim.

{¶ 31} Upon review of this record, including the contentious nature of this litigation, we cannot conclude the trial court erred in not finding appellants' conduct frivolous, as defined in R.C. 2323.51(A)(2)(i)-(iv). Accordingly, we overrule appellants' first assignment of error.

### B. Second Assignment of Error

{¶ 32} In their second assignment of error, appellants argue the trial court erred in overruling their alternative motion for sanctions concerning five pre-trial motions filed by appellee. Appellants' alternative motion for sanctions was filed pursuant to Civ.R. 11 and 37(A). According to appellants, the motions filed by appellee on December 23, 2009, February 26, June 11, September 8 and 14, 2010, were groundless and unjustified such that sanctions should have been awarded under both Civ.R. 11 and 37. The trial court rejected appellants' arguments in their entirety after concluding the requirements of Civ.R. 11 and 37(A)(4) had not been met.

{¶ 33} Civ.R. 11 requires the attorney of record of every party represented by counsel to sign every pleading, motion or other document. "The signature of an attorney * * * constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." An attempt to invoke Civ.R. 11 and seek sanctions under the rule involves a three-step process. *Ceol v. Zion Industries, Inc.*, 81 Ohio App.3d 286, 290 (9th Dist.1992). Initially, the trial court must consider whether the attorney signing the document has read the pleading, harbors good

grounds to support it to the best of his or her knowledge, information, and belief, and did not file it for purposes of delay. *Id.* If the court determines the attorney willfully violated the rules, it may award the opposing party its attorney fees and expenses. Civ.R. 11.

{¶ 34} Thus, the relevant inquiry under Civ.R. 11 is whether the attorney's actual intent or belief was of willful negligence. *Id.* at 290. Civ.R. 11 applies a subjective bad-faith standard. *Riston* at ¶ 12, citing *Stone* at 721. The attorney's actual intent or belief is consequently relevant to the determination of whether he or she acted willfully. *Id.* The standard of review on the decision to award or not award sanctions, pursuant to Civ.R. 11, is whether the trial court abused its discretion. *Kemp, Schaeffer & Rowe Co., L.P.A. v. Frecker*, 70 Ohio App.3d 493 (10th Dist.1990). The court has corresponding latitude in furthering the administration of justice by the extent of the sanction imposed. *Id.* at 497.

{¶ 35} Civ.R. 37(A)(4), in relevant part states:

> Award of expenses of motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent who opposed the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
>
> If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
>
> If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

{¶ 36} We review the trial court's resolution of discovery matters under an abuse of discretion standard. *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 2005-Ohio-6500, ¶ 39 (10th Dist.), citing *Burke Lakefront Serv. v. Lemieux*, 8th Dist. No. 79665, 2002-Ohio-4060 (noting that, absent an abuse of discretion, an appellate court must

affirm a trial court's disposition of discovery issues). Additionally, an appellate court will not disturb on appeal the trial court's decision whether or not to grant an award of sanctions absent an abuse of discretion. *Toney v. Berkemer*, 6 Ohio St.3d 455, 458 (1983) (noting "Civ.R. 37(A) and (B) provide broad discretion to the trial court to impose sanctions for failure to comply with the trial court's discovery orders").

{¶ 37} As this decision has noted, the nature of discovery in this case was nothing short of contentious. This is evident from the multitude of discovery motions filed, the trial court's decisions resolving those disputes, and this court's decision in *Bennett*. In denying appellants' request for sanctions, the trial court concluded appellee's December 23, 2009 motion to amend the complaint was untimely and that appellee failed to make a prima facie showing that support of the proposed claim could be obtained. However, this is not necessarily indicative that the request to amend was frivolous in light of the magistrate's findings that much of the delay in this case was "understandably muddled by the previous pattern of discovery abuses" by appellants and that appellee's proposed evidence in support of the claim was being submitted too late in the proceedings. (Apr. 1, 2010 Decision, 6.)

{¶ 38} Regarding the February 26, 2010 discovery motion, said motion was granted in part and denied in part. Additionally, the trial court denied both parties' request for sanctions arising out of said motion. The magistrate extensively discussed the parties' positions and ultimately determined that sources potentially housing relevant emails be examined and verified. Therefore, the magistrate ordered that an independent computer consultant make forensic computer images in accordance with industry practice and that appellants bear the costs. In doing so, the court explained appellants' conduct of defying prior court orders authorized the "extreme measure of ordering production of hard drives and metadata because [appellants] previously could not be taken at their word that all requested documents had been produced." (Apr. 1, 2010 Decision, 18.)

{¶ 39} In the June 11, 2010 motion, appellee again sought sanctions for appellants' alleged failure to comply with discovery orders. This motion was based on an allegation that appellants recently revealed hard drives and servers had been destroyed after this litigation was filed. After a review of analogous federal cases and the evidence in the record, the trial court was unable to conclude appellants' process and protocol of retaining

information relevant to this action was inherently deficient or unreliable such that it had to assume appellants willfully destroyed evidence or acted in bad faith. Thus, the trial court concluded that, while appellants' protocols for transitioning its computer system may have risen to the level of simple negligence, the record lacked evidence that the protocols were implemented in bad faith.

{¶ 40} The September 8, 2010 discovery motion was based on allegations of newly discovered information indicating appellants deleted relevant discovery via the use of software known as CCleaner. In support, appellee submitted an affidavit from its expert witness, Mitchell Caley. In the trial court's view, the affidavit of Caley fell short of the standard required of an expert witness and forced the court "to engage in impermissible speculation." (Oct. 1, 2010 Decision, 3.) Thus, the trial court denied the September 8, 2010 motion requesting discovery sanctions. The September 14, 2010 discovery motion again alleged appellants failed to produce discovery. On the day of trial, the trial court indicated discovery would not continue while trial was proceeding. Therefore, the trial court denied the motion to compel.

{¶ 41} Upon review of the voluminous record and the detailed decisions rendered by the trial court, we cannot find the trial court abused its discretion in denying appellants' request for sanctions pursuant to Civ.R. 11 and 37(A). Sanctions will only be awarded for willful violations of Civ.R. 11, and this record does not contain evidence showing a willful violation of Civ.R. 11. *Zunshine v. Cott*, 10th Dist. No. 07AP-764, 2008-Ohio-2298, ¶ 2. Similarly, we cannot conclude that the trial court abused its discretion in finding the challenged motions were substantially justified or based on circumstances that would make an award of expense unjust.

{¶ 42} Accordingly, appellants' second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 43} In their third assignment of error, appellants argue the trial court erred in overruling their objections to the magistrate's decision awarding fees and costs to appellee in the amount of $105,276.13.

{¶ 44} A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. "[T]he trial court must consider

the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate." *Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175, 178 (9th Dist.1987).

{¶ 45} In determining a suitable sanction, a trial court should consider: (1) the history of the case, (2) all the facts and circumstances surrounding the noncompliance, (3) what efforts, if any, the faulting party made to comply, (4) the ability or inability of the faulting party to comply, and (5) any other relevant factors. *Billman v. Hirth*, 115 Ohio App.3d 615, 619 (10th Dist.1996). Taking into account the background of the noncompliance, the trial court must balance the severity of the violation against the degree of possible sanctions and select the sanction that is most appropriate. *Huntington Natl. Bank v. Zeune*, 10th Dist. No. 08AP-1020, 2009-Ohio-3482, ¶ 27. A violation may call for different degrees of sanctions under different circumstances. *Russo* at 178. The reviewing court, in looking at the sanctions so imposed, cannot substitute its judgment for that of the trial court. Thus, the appropriateness of the choice of the sanction imposed is reviewable to the extent that the trial court may have abused its discretion by being arbitrary in selecting too harsh or too lenient a sanction. *Id.* at 179.

{¶ 46} A party seeking an award of attorney fees has the burden of demonstrating the reasonable value of such services. *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, ¶ 145. *See also Enyart v. Columbus Metro. Area Community Action Org.*, 115 Ohio App.3d 348, 358 (10th Dist.1996) (the burden of demonstrating the reasonableness of the work hours devoted to the case rests with the attorney seeking the award). " 'Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.' " *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985).

{¶ 47} During the sanctions hearing, the assigned magistrate heard several hours of testimony. Appellee introduced expert testimony regarding the attorney fees and the expert provided an opinion as to whether or not the fees requested in this case were reasonable. A magistrate has the ability to evaluate the credibility of an attorney's testimony on the reasonableness of attorney fees and to make an award of reasonable

attorney fees based upon his or her own discretion. *Parks v. Kanani*, 10th Dist. No. 01AP-905 (Mar. 21, 2002), citing *Chapman v. Adkins*, 10th Dist. No. 00AP-1419 (Sept. 20, 2001).

{¶ 48} In his decision of May 3, 2011, the magistrate devoted over 20 pages to a discussion of the fees to be awarded as a Civ.R. 37(B) sanction in accordance with the court's prior orders. While appellee initially submitted a fee and cost request totaling $384,652.71 for appellants' "obstinate and obstructive behavior," the magistrate reduced the amount to $105,276.13. (May 3, 2011 Decision, 5.)

{¶ 49} Under this assigned error, appellant argues: (1) appellee's time entries for services are beyond the scope of the sanctions' award, (2) appellee failed to submit competent evidence of market rates, and (3) awarding appellee his counsel's 2010 rates created a windfall to appellee. These are the same arguments presented to the magistrate and to the trial court via appellants' objections to the magistrate's decision. In resolving appellants' arguments, the magistrate considered the fee application submitted by appellee, the testimony at the sanctions hearing, and the parties' arguments concerning the same.

{¶ 50} The time frame for compensable activity was June 15, 2005 to September 8, 2008. As they do on appeal, appellants argued to the trial court that appellee sought compensation outside the parameters of what the court awarded and that the sanction was limited to discovery efforts initiated by appellee and incurred in pursuit of discovery. The magistrate agreed with many of the areas of concern raised by appellants and deducted those amounts accordingly. However, regarding entries that were not deducted, appellants assert it was "likely by oversight" because of the problems with the fee application. (Appellants' brief, 49.) We disagree.

{¶ 51} In its detailed decision, the trial court, speaking through the magistrate, addressed each area of concern flagged by appellants and provided an explanation of whether the challenged fee entries fell within the purview of the court's discovery order. On appeal, appellants have not demonstrated an abuse of the trial court's discretion in doing so. Additionally, other than the blanket assertion that it is so, appellants have not directed this court to anything particular in the record to demonstrate the trial court's

allowance of particular fee entries was due to a mere oversight on the part of the trial court.

{¶ 52} Appellants next argue appellee failed to submit competent evidence of market rates. In setting the hourly rate, the magistrate relied on the testimony of appellee's counsel that his rates are competitive with the top senior litigation attorneys in Columbus. According to appellee's counsel, such rates fall within a range of $375 to $590 per hour. The magistrate recognized counsel's 40 years of litigation experience, including his concentration in employment discrimination litigation since 1993. Appellee's counsel testified his current hourly rate at the time of the hearing was $450 per hour.

{¶ 53} Kevin R. McDermott provided additional expert testimony at the sanctions hearing. In his opinion, the fees sought by appellee's counsel were reasonable and necessary in connection with discovery. Further, McDermott testified the rates charged by the attorneys from appellee's office, i.e., $450, $330, and $225 per hour, were consistent with the type of quality of an attorney specializing in cases similar to this.

{¶ 54} Given the testimony and evidence presented, we cannot conclude the trial court abused its discretion in finding the hourly billing rates of appellee's counsel were consistent "with those in the community or the relevant attorney's experience, reputation or ability." (May 3, 2011 Decision, 21.) Accordingly, we reject appellants' argument that appellee failed to submit competent evidence of market rates.

{¶ 55} Lastly, under this assigned error, appellants argue, because this case was filed in 2004, utilization of counsels' 2010 rates of $450, $330, and $225 per hour for the respective attorneys involved in appellee's case created a windfall for appellee. We disagree. The period of the discovery sanction was from June 2005 to September 2008, thus the initial filing date of the complaint is largely irrelevant. Moreover, in deciding to apply counsel's 2010 rates, the magistrate was persuaded by *Barnes v. Cincinnati*, 401 F.3d 729 (6th Cir.2005), which held current market rates could be utilized to determine sanctions where litigation was ongoing for several years, and the delay was attributed in large part to the sanctioned party. *Id.* (adjustments for delay in payment using either current or historic hourly rates not prohibited). Though appellants disagree with the trial court's reliance on *Barnes*, they have not provided us with any authority requiring that past hourly rates should have been applied in this instance. Moreover, whether this court

would have fashioned the sanctions' award differently in this case is not the standard we are to apply when reviewing a sanctions award under Civ.R. 37.   Because we cannot conclude the trial court's reliance on *Barnes* constituted an abuse of discretion, we must reject appellants' assertion that application of appellee's counsels' 2010 rates to conduct that occurred from 2005 to 2008 was error.

{¶ 56} For all the foregoing reasons, appellants' third assignment of error is overruled.

## IV.  CONCLUSION

{¶ 57} Having overruled appellants' three assignments of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

DORRIAN and GREY, JJ., concur.

GREY, J., retired, formerly of the Fourth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____