[Cite as *In re Kasper*, 2014-Ohio-1256.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of:<br>Soraya Hevia Kasper [deceased], | : | |
| Petitioner-Appellee, | : | |
| | : | No. 13AP-428 |
| [Omar Hevia, | | (C.P.C. No. 07DR-1810) |
| | : | |
| Third-Party-defendant/<br>Cross-Appellant], | : | (REGULAR CALENDAR) |
| v. | : | |
| Eric C. Kasper, | : | |
| Petitioner-Appellant/<br>Cross-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on March 27, 2014

*Shumaker, Loop & Kendrick,* and *Richard D. Rogovin*, for
Omar Hevia.

*Eric W. Johnson*, for Eric C. Kasper.

*Joel R. Rovito*, for amicus curiae Alexander Kasper.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

O'GRADY, J.

{¶ 1} Appellant, Eric C. Kasper, appeals from the April 25, 2013 judgment of the
Franklin County Court of Common Pleas, Division of Domestic Relations ("domestic
court"), denying his motion for a constructive trust over his former wife's life insurance

proceeds held in custodial accounts for testamentary trusts. Appellee, Omar Hevia, the trustee for the testamentary trusts, appeals the court's May 17, 2013 judgment ordering him to pay appellant attorney fees. Appellant also filed a cross-appeal from the judgment regarding attorney fees.[1] For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

{¶ 2} The domestic court dissolved the marriage between appellant and Soraya Kasper in 2007. The Kaspers had three children as issue of the marriage and executed a shared parenting plan. The domestic court incorporated the shared parenting plan into a final judgment. Section IX of the shared parenting plan addresses life insurance, and provides:

> A. Both parties shall maintain life insurance on their lives until the youngest child completes his post high school education, military service, or attains the age of twenty five (25), whichever occurs first. Eric shall maintain a policy/ies in the amount of $500,000.00, naming Soraya as the beneficiary and the children as alternate beneficiaries. Soraya shall maintain a policy/ies in the amount of $500,000.00 naming Eric as the beneficiary and the children as alternate beneficiaries. At all pertinent times, these policies shall have a death benefit of no less than $500,000 for each party.

> B. The insurance proceeds are to be used to support the children until the youngest child finishes his post high school education, military service or attains the age of 25, whichever first occurs. The proceeds are to be used and allocated on a pro rata basis per child. The parties shall execute a life insurance trust(s) naming the other party as trustee in order to effectuate the above. This Trust shall be in place on or before the date of final hearing.

> C. As any one of the events enumerated in subsection B. above occurs to an individual child, such child shall receive one-third (1/3) of the balance of the proceeds in three (3) equal installments, regardless of such child's age or support need, on the following dates: the first installment shall be paid on the day such child completes his post high school education, military service or turns age 25, whichever first occurs; the second installment shall be paid five years subsequent to that

---

[1] Although Eric C. Kasper and Omar Hevia have both filed cross-appeals in this matter, for ease of discussion, we refer to them as "appellant" and "appellee" respectively.

date and the third installment shall be paid five years subsequent to the second installment. The parties shall execute a life insurance trust(s) naming the other party as trustee in order to effectuate the above. This Trust shall be in place on or before the date of final hearing.

D. No later than February 15 of each year, commencing February 15, 2008, and within ten (10) days of written request each party shall provide the other with a copy of the insurance policy/ices and any amendments thereto, and any and all documentation necessary to show the then current beneficiary/ies and coverage in effect.

(R. 21, 20-21.)

{¶ 3} The Kaspers also executed a separation agreement which the court incorporated into the dissolution decree. Section V.G.2. of the separation agreement provides:

Soraya has a Guardian Life Insurance Term Life Policy #3182. Soraya shall retain the aforementioned policy or obtain and maintain an additional policy or replacement policy, naming Eric as the beneficiary as more fully set forth in the parties' Shared Parenting Plan filed with this Court.

(R 6, 10.)

{¶ 4} In August 2012, Soraya died. Subsequently, appellant claimed he learned Soraya had named her brother, Omar Hevia, "as the beneficiary or trustee of the life insurance trust that is to receive, or has received, the life insurance proceeds set forth in the shared parenting plan." (R. 38.) On October 17, 2012, appellant filed three motions with the domestic court under the dissolution case number. First, he asked the court to join appellee as a third-party defendant in the action. Second, he requested a temporary restraining order to prevent appellee from using the life insurance proceeds. Third, he filed a motion for transfer of funds or imposition of a constructive trust, asking the domestic court to issue one or more of the following orders:

1. that third-party Defendant Omar Hevia immediately transfer all insurance proceeds received by him in relation to this matter to Petitioner-Husband upon receipt;

2. that a constructive trust be imposed in favor of Petitioner-Husband and upon any and all life insurance proceeds received by third-party Defendant Omar Hevia in relation to this matter;

3. that the life insurance proceeds be ordered to be paid directly to Petitioner-Husband from the insurance company, once identified; and

4. that third-party Defendant Omar Hevia be ordered to pay the attorney fees, costs, and expenses incurred by Petitioner-Husband.

(R. 40.)

{¶ 5} Appellee filed a limited appearance in response to appellant's motions. Appellee argued the Franklin County Court of Common Pleas, Probate Division ("probate court") had exclusive jurisdiction over the proceeds under R.C. 2104.24(A)(1)(c) and (e). Specifically, appellee noted the probate court admitted Soraya's will to probate on October 11, 2012. Soraya created testamentary trusts in her will and named appellee as trustee. On November 5, 2012, the probate court appointed appellee trustee of three testamentary trusts—one for the benefit of each of the Kasper children. Appellee's letters of authority state that "[b]ond is dispensed with by law; all checks must be payable to the trustee and a custodial depository appointed by order of the Court." (R. 49-51, 7.) On November 9, 2012, the probate court issued orders requiring the payment of Soraya's life insurance proceeds to Huntington National Bank for deposit into custodial accounts for the benefit of each child under R.C. 2109.13. The orders state that "[n]one of the funds, in whole or in part, shall be released by the depositary except upon order of this court." (R. 49-51, 10.) According to appellee, the funds were deposited on November 19, 2012.

{¶ 6} The parties appeared before the domestic court on November 29, 2012 and orally agreed to submit their arguments via briefs; but, instead of a brief, appellee filed three motions on January 7, 2013. Appellee asked the court to transfer venue to the probate court. In the alternative, appellee filed a motion for a full evidentiary hearing and modification of the shared parenting plan. He also requested appointment of a guardian ad litem for the children.

{¶ 7} Subsequently, appellant filed a brief in support of his October 17, 2012 motions and a motion for attorney fees because he had to defend against appellee's "frivolous" motions. (R. 68.) Appellee filed a motion for discovery and asked the court to defer ruling on pending motions until its completion. The domestic court granted this motion. Then, appellee filed a supplemental memorandum in support of his motion for a change in venue based on the exchanged discovery. In response, appellant filed a memorandum contra, motion to strike the supplemental memorandum, and a motion for sanctions.

{¶ 8} On April 25, 2013, the domestic court issued a decision and entry. The decision stated the parties appeared before the court that day and "argued their positions and presented evidence regarding attorneys' fees." (R. 110, 2.) The court denied appellee's motion to transfer venue, finding, in part, that because the life insurance proceeds were to act as child support under the shared parenting plan, it had exclusive and continuing jurisdiction "over any related cause." (R. 110, 5.) The court granted appellant's motion to join appellee as a third-party defendant.

{¶ 9} Regarding appellant's request for a constructive trust, the domestic court found the shared parenting plan contained conflicting provisions and interpreted it to mean the parties intended their life insurance proceeds be held in trust for the support of the children. However, the court found a constructive trust was not justified. The court found appellee would not be unjustly enriched in his position as trustee, and no equitable principles were violated because the "intent is for the support of the children regardless of who is the trustee." (R. 110, 10.) The court also noted that because it "finds a constructive trust inapplicable, the proceeds are now under the jurisdiction of the probate court and this court does not believe it has jurisdiction to change the trustee." (R. 110, 11.)

{¶ 10} On May 17, 2013, the domestic court issued a decision on appellant's motions for attorney fees and sanctions. The court denied the motion for sanctions but awarded appellant attorney fees under R.C. 3105.73(B) for expenses he incurred responding to appellee's motion to appoint a guardian ad litem, motion to modify the shared parenting plan, and supplemental memorandum in support of the motion to change venue. The court ordered appellee to pay these fees within 30 days of the court's decision. The domestic court found the fees were in the nature of a children's expense,

and appellee could ask the probate court to approve payment of the fees from the children's trusts.

## II. ASSIGNMENTS OF ERROR

{¶ 11} On appeal, appellant presents this court with one assignment of error for review:

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR IMPOSITION OF A CONSTRUCTIVE TRUST.

{¶ 12} Appellee presents this court with one cross-assignment of error for review:

> While the Court correctly determined that the Trustee's Motion to Appoint a Guardian Ad Litem, and Motion for a Full Evidentiary Hearing and Modification of the Shared Parenting Plan were (1) not frivolous, and (2) motivated by the belief that such motions were necessary to protect the assets of the children, it erred and abused its discretion in awarding legal fees from the children's funds as equitable under R.C. § 3105.73(B) and further erred in awarding legal fees for services claimed but not performed.

{¶ 13} Appellant also presents this court with a cross-assignment of error for review:

> THE TRIAL COURT ERRED IN FAILING TO FIND THE TRUSTEE'S CONDUCT FRIVOLOUS AND AWARDING FEES AND SANCTIONS ACCORDINGLY.

{¶ 14} In addition, Alexander Kasper, the Kaspers' oldest child, has filed an amicus curiae brief in support of appellee.

## III. DISCUSSION

### A. *Constructive Trust*

{¶ 15} Under appellant's assignment of error, he contends the domestic court erred when it denied his motion for imposition of a constructive trust. Appellant complains the court failed to carry out the intent of appellant and Soraya as evidenced by the shared parenting plan, and imposition of a constructive trust would be equitable.

{¶ 16} A constructive trust arises by operation of law against one who " 'by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or

who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.' " *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, ¶ 18, quoting *Ferguson v. Owens*, 9 Ohio St.3d 223, 225 (1984), quoting 76 American Jurisprudence 2d, Trusts, Section 221, at 446 (1975).  "A constructive trust is considered a trust because ' "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." ' " *Estate of Cowling* at ¶ 18, quoting *Ferguson* at 225, quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386 (1919).

{¶ 17} Instead of challenging the probate court orders, appellant filed a motion in the domestic court to make appellee the trustee of a constructive trust over Soraya's life insurance proceeds.  In essence, appellant sought an order from the domestic court to direct and control the conduct of a testamentary trustee and have the trustee pay appellant life insurance proceeds out of custodial accounts that are subject to the control of the probate court.  But, as we explain below, the domestic court correctly denied the motion because it lacked jurisdiction to grant the relief appellant requested.

{¶ 18} "Where a matter falls within the exclusive jurisdiction of the probate court, no other court may exercise jurisdiction over the matter." *Biro v. Biro*, 6th Dist. No. OT-10-017, 2010-Ohio-5169, ¶ 13; *Caudill v. Caudill*, 29 Ohio App.3d 51, 52 (10th Dist.1986). R.C. 2101.24(A)(1)(e) addresses the probate court's jurisdiction over a testamentary trustee and provides: "Except as otherwise provided by law, the probate court has exclusive jurisdiction: * * * (e) To appoint and remove * * * testamentary trustees, *direct and control their conduct*, and settle their accounts."  (Emphasis added.)  Thus, the probate court has exclusive jurisdiction to direct and control appellee's actions involving the life insurance proceeds.  *See by way of analogy Bauman v. Hogue*, 160 Ohio St. 296, 297 (1953), quoting former General Code Section 10501-53 (finding probate court had jurisdiction to consider action of decedent's father, who, in part, requested a finding that estate administrator lacked authority to give decedent's husband certain estate assets because, "to use the language" of G.C. 10501-53, it was an action that would " 'direct and control the conduct of' " an administrator); *Rieser v. Rieser*, 191 Ohio App.3d 616, 2010-Ohio-6227, ¶ 1 (2d Dist.) (finding general division of common pleas court lacked

jurisdiction to prohibit estate executor from prosecuting an action in federal court based on a prior settlement agreement the general division approved because such relief "directs and/or controls the conduct of an executor, which per R.C. 2101.24(A)(1) is within the exclusive jurisdiction of the probate court"); *Biro* at ¶ 13, citing *In re Guardianship of Constable*, 12th Dist. No. CA99-05-039 (June 12, 2000) (finding that, while domestic court had jurisdiction over child custody and support matters, guardianship of divorced couple's son fell within exclusive jurisdiction of probate court).

{¶ 19} Here, the probate court appointed appellee trustee of trusts for each of the Kasper children. The court issued orders for the payment of Soraya's life insurance proceeds to custodial accounts for each child. The probate court's orders state none of the funds, in whole or in part, shall be released except upon the probate court's order. Thus, while the domestic court could still address matters relating to the separation order, the probate court had exclusive jurisdiction over the life insurance proceeds.

{¶ 20} Appellant directs this court's attention to a First District Court of Appeals' case on the issue of jurisdiction of a domestic court. In *Kell v. Verderber*, 1st Dist. No. C-120665, 2013-Ohio-4223, the appellant challenged a domestic court's finding that it lacked jurisdiction to hold her ex-husband in contempt for a violation of a separation agreement. The First District explained that domestic courts have "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." *Id.* at ¶ 19, quoting R.C. 3105.011. The First District cited additional authorities on the domestic court's power to grant relief in domestic relations matters and ability to enforce separation agreements. *Id.* at ¶ 19-20. Ultimately, the First District concluded that the domestic court "had continuing jurisdiction to enforce the provisions of the separation agreement incorporated into the divorce decree through a post-decree motion for contempt." *Id.* at ¶ 20.

{¶ 21} Unlike the ex-wife in *Kell*, appellant did not bring an action to directly enforce a separation agreement against his former spouse, i.e., this is not a contempt action against Soraya. Instead, appellant seeks to indirectly enforce that agreement by directing the conduct of a testamentary trustee. Therefore, we find this case distinguishable from *Kell*.

{¶ 22} For the foregoing reasons, we find the domestic court lacked jurisdiction to grant appellant the relief he requested—only the probate court could direct and control appellee's actions as a testamentary trustee.  Thus, the domestic court correctly denied appellant's motion for a constructive trust.

{¶ 23} However, our decision does not mean a domestic court never has jurisdiction to impose a constructive trust.  For instance, in *Blevins v. Estate of Blevins*, 10th Dist. No. 12AP-554, 2013-Ohio-947, the decedent's ex-wife was supposed to receive a share of his retirement benefits under an agreed decree of divorce.  A domestic court imposed a constructive trust over funds received by the decedent's new wife as a beneficiary of the decedent's retirement plan because she knew or should have known she was receiving funds to which she was not entitled.  We found the domestic court had jurisdiction "to enforce, as best it could, its previous orders with regard to the division of property" and could create a constructive trust for the decedent's ex-wife.  *Id.* at ¶ 18.

{¶ 24} In addition, our decision does not mean a party to a shared parenting plan can subvert the terms of that plan or the jurisdiction of the domestic court by simply creating a testamentary trust.  Instead, our decision is limited to the facts before us.

{¶ 25} Accordingly, we overrule appellant's assignment of error.

B.  *Attorney Fees*

{¶ 26} In his cross-assignment of error, appellee contends the domestic court abused its discretion when it awarded appellant attorney fees under R.C. 3105.73(B).

{¶ 27} R.C. 3105.73(B) provides:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶ 28} "An award of attorney fees is generally within the sound discretion of the trial court and not to be overturned absent an abuse of discretion." *Wagenbrenner v. Wagenbrenner*, 10th Dist. No. 10AP-933, 2011-Ohio-2811, ¶ 19, citing *Shirvani v.*

*Momeni*, 10th Dist. No. 09AP-791, 2010-Ohio-2975, ¶ 22. The phrase "abuse of discretion" implies the trial court's decision was unreasonable, arbitrary or unconscionable. *Bennett v. Martin*, 10th Dist. No. 13AP-99, 2013-Ohio-5445, ¶ 19, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 29} Appellee argues it was inequitable for the domestic court to award attorney fees. He highlights the fact that the domestic court denied appellant's motion for sanctions, finding appellee's motions were not frivolous. The court found appellee filed the motions because he believed he needed to protect the children's money, i.e., he did not file the motions for an improper purpose. Appellee complains the domestic court "offers no explanation in its Decision and Entry as to what factors it considered in making this [fee] award, or the reason why this award is equitable." (Appellee/cross-appellant's brief, 12.) He also complains the court did not make an explicit finding that appellant's counsel had a reasonable hourly rate and spent a reasonable amount of time on the case. According to appellee, "[a] court is not entirely free to award legal fees under § 3105.75 (B) without a rational explanation, particularly when making the award to a nonprevailing party such as Mr. Kasper." (Appellee/cross-appellant's brief, 12.)

{¶ 30} Appellee does not cite to any legal authority to support his suggestion that the domestic court had to issue explicit findings, as opposed to a general judgment, on the issue of attorney fees. Moreover, in its May 17, 2013 decision and entry granting attorney fees, the domestic court stated it conducted a hearing on April 25, 2013, at which time the parties "argued their positions *and presented evidence* regarding attorneys' fees and sanctions." (Emphasis added.) (R. 110, 1.) The court's entry indicates it considered an affidavit filed by appellant's attorney detailing the fees appellant incurred. We note that appellant's counsel filed an affidavit on April 25, 2013, which does appear in the record.

{¶ 31} Appellee did not provide this court with a transcript of the hearing on attorney fees. *McAdams v. B&D Concrete Footers, Inc.*, 10th Dist. No. 12AP-1088, 2013-Ohio-2456, ¶ 5, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) ("When portions of the transcript necessary for the resolution of assigned errors are omitted from the record, an appellate court has nothing to pass upon, and, consequently, as to those assigned errors, the reviewing court must presume the validity of the trial

court proceedings and affirm.").  However, the parties did submit a "joint statement of the evidence and proceedings" under App.R. 9(C).

{¶ 32} In the parties' joint statement, they focus largely on summarizing background information.  Regarding the April 25 hearing, the parties state they "appeared before the judge" on that date "and, while the purpose and nature of the scheduled hearing was not entirely clear, each orally argued his position regarding the various motions then pending before the court."  (R. 137-38, 4.)  However, the parties fail to detail what evidence they introduced at the hearing on attorney fees.  The joint statement is an insufficient reconstruction of the April 25 hearing to overcome the presumption of regularity mandated by the above-cited precedent.  Therefore, in the absence of a transcript or adequate App.R. 9(C) statement, we must affirm the domestic court's finding regarding the equitable nature of the fee award.

{¶ 33} Additionally, appellee complains that in the April 25, 2013 affidavit on attorney fees, appellant's attorney "mistakenly claims work performed which could not have been performed based upon the record."  (Appellee/cross-appellant's brief, 13-14.)  Specifically, the attorney averred appellant incurred attorney fees "by being forced to respond to [appellee's] memorandum filed April 1, 2013."  (R. 110, 2.)  Appellee argues the record shows appellant's attorney never filed a response to the April 1 memorandum.  However, it is apparent from the itemization of fees in the April 25 affidavit that appellant did not actually request attorney fees for a responsive memorandum.  Thus, the domestic court did not award legal fees for services not actually performed.

{¶ 34} Finally, appellee complains he was not provided sufficient notice to properly analyze the April 25 affidavit and that the itemization was improper.  But, again, in the absence of a hearing transcript or a sufficient App.R. 9(C) statement about what happened in the hearing on attorney fees, we cannot evaluate these complaints and must presume the regularity of proceedings.

{¶ 35} Therefore, we overrule appellee's cross-assignment of error.  This decision renders moot appellant's cross-assignment of error, which appellant asked this court to only consider if we sustained appellee's cross-assignment of error.  *See* App.R. 12(A)(1)(c).

**IV.  CONCLUSION**

{¶ 36} For the foregoing reasons, appellant's assignment of error and appellee's cross-assignment of error are overruled.   Appellant's cross-assignment of error is rendered moot. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

_____